UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
N.B. and P.H., individually and on behalf of C.B.,

                              Plaintiffs,                          **MEMORANDUM
AND OPINION**

          -against-                                   CV 24-4758 (AYS)

SACHEM CENTRAL SCHOOL DISTRICT,

                              Defendant.
-----------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

Plaintiffs, proceeding pro se, bring this action on behalf of themselves and their minor daughter, C.B., pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, to appeal the February 23, 2024 decision of the New York State Department's State Review Officer, which found that Defendant, Sachem Central School District, offered C.B. a free appropriate public education for the 2022-2023 school year. Presently before the Court is Defendant's motion for summary judgment, which Plaintiffs oppose in its entirety. Having reviewed the papers both in support of and in opposition to the motion, the Court sustains and affirms the State Review Officer's decision. Accordingly, Defendant's motion for summary judgment is granted.

BACKGROUND

This case commenced with the filing of a due process complaint by Plaintiff N.B., seeking placement of C.B. for the 2022-2023 school year in the Defendant Sachem Central School District's ("Defendant" or the "District") 8:1:2 Special Class at Samoset Midde School ("Samoset") as opposed to the recommendation by the District's Committee on Special Education ("CSE") that C.B. be placed in the 8:1:2 Special Class at Sagamore Middle School ("Sagamore"). (Gibson Decl. dated Apr. 25, 2025 ¶ 3.) An impartial hearing took place over the

1

course of five nonconsecutive dates from May 16, 2023 through June 27, 2023 before Impartial Hearing Office ("IHO") Sebastien Weiss, Esq. (Gibson Decl. ¶ 4.) By decision dated October 12, 2023, the IHO found for the District, determining that Defendant's placement of C.B. was appropriate based upon C.B.'s particular educational needs. (IHO Decision dated Oct. 12, 2023, annexed to Gibson Decl. as Ex. A.)

Plaintiff thereafter appealed the IHO's decision to the New York State Education Department's Review Officer ("SRO"), who, on February 23, 2024, found that the evidence in the hearing record supported the IHO's determination that the District offered C.B. a free appropriate public education ("FAPE") for the 2022-2023 school year. (SRO Decision dated Feb. 23, 2024, annexed to Gibson Decl. at Ex. B.)

On June 27, 2024, Plaintiff, N.B., proceeding pro se, commenced the within action, alleging that Defendant failed to offer C.B. a FAPE for the 2022-2023 school year based upon its refusal to place C.B. in a special class at Samoset, her home school. (Compl., Docket Entry ("DE") [1].) N.B. amended her Complaint on December 9, 2024 to add her husband, P.H., as a co-plaintiff. (DE [28].) No discovery was conducted and, on June 11, 2025, the District filed the within motion for summary judgment. The facts set forth below are taken from the transcript of the IHO hearing.

C.B. is a child classified with autism and has been classified as such since preschool. (Transcript of Impartial Hearing ("Tr.") 122-23.) C.B. has significant needs with cognitive abilities in the extremely low range and has deficits in all areas of academic functioning. (Tr. 123-24; Impartial Hearing Ex. 26.) She also has receptive and expressive language delays and her adaptive functioning is in the low range. (Tr. 124; Ex. 16.) C.B. is very internally distracted,

is sensory seeking and needs constant refocusing and redirection. (Tr. 319, 324.) Her eye contact is fleeting and she engages in little to no social reciprocity. (Id.)

In school, C.B. does not engage in spontaneous interactions with her peers and her interactions must be facilitated by an adult as she cannot function independently in a group setting. (Tr. 94, 125; Ex. 14.) She has deficits in the areas of motor planning, sensory motor, and fine and visual motor skills, and shows poor bilateral hand skills. (Tr. 140-41; Ex. 15.) C.B. has significant impairment in her communication and social reciprocity, in her understanding of nonverbal communication and in her understanding of relationships. (Tr. 318.) She also has significant deficits with repetitive behaviors in that she engages in a lot of vocal stereotype, script talk, and sensory seeking behaviors, such as jumping, clapping, flapping or bouncing. (Tr. 318-19.) Significantly, C.B. can only learn new concepts in a one-to-one setting in a discrete trial format, which is a repetitive approach to teaching and learning where a student works on and learns the same material repeatedly in a short period of time, takes a break, and then is reintroduced the material again. (Tr. 125, 263, 319-20, 426.)

C.B. attended Waverly Avenue Elementary School ("Waverly") within the District from kindergarten through fifth grade. (Tr. 120.) Waverly was not C.B.'s home school. (Id.) C.B.'s fifth grade teacher, Sarah Dayton ("Dayton"), testified at the IHO hearing that C.B. would sing for a good portion of the school day, which distracted her, and that C.B. required individual support to get back to what she was learning, causing difficulty completing tasks in a group setting. (Tr. 440-41.) Dayton further testified that C.B. needs clear expectations and a structured environment because she engages in self-stimulatory behaviors, such as singing or repetitive movements. (Tr. 458; Ex. 31.) C.B. performs best when she has an adult in close proximity to help her complete an academic task. (Tr. 458; Ex. 31.) In fact, C.B.'s level of need is so great,

she requires extended school day services of a teaching assistant ("TA"), four times a week for one hour in the home, to reinforce the instruction of the school day. (Tr. 168; Exs. 3-12.)

During the 2020-2021 school year, C.B. was a fully remote learner at her parent's request. (Tr. 132.) During that school year, C.B. stopped physically attending school at the end of November 2021 and did not return to school on a full-time basis until April 2022. (Tr. 129, 170-72, 323; Ex. 19.) During that time, C.B. showed no desire to leave her home for any activities, recreation or entertainment. (Tr. 159; Ex. 19.) It was, in fact, difficult for C.B. to leave her house in general. (Tr. 443.) As a result, C.B. refused to attend school. (Tr. 159, 322-23; Ex. 19.)

In January 2021, C.B. began home instruction due to a diagnosis of anxiety. (Tr. 159-60, 322-23; Ex. 19.) In response to her needs, in December 2021, the District added fifteen hours of home-based parent counseling and training to C.B.'s Individualized Education Program ("IEP") to assist her parents with getting her out of the house and to school. (Tr. 165; Ex. 8.) In March 2022, an additional fifteen hours of parent training was added to C.B.'s IEP because the parent trainer had used most of the original fifteen hours, thus providing a total of thirty hours of parent training to reintegrate C.B. into school. (Tr. 169; Ex. 9.) Also in March 2022, eight hours of direct Behavior Intervention Services ("BIS") were added to the IEP at the request of the parent trainer. (Tr. 170-73, 335-37; Exs. 10, 19, 22.) C.B. returned to school full-time in April 2022. (Tr. 170-72, 323.) The transition back to school was slow, consisting of about one and one-half week's process of slowly getting C.B. back into Waverly and re-acclimating her before she was back for full school days. (Tr. 323.)

For the 2022-2023 school year, the District's CSE recommended that C.B. be placed in the 8:1:2 program at Sagamore. (Tr. 260-61, 450-51; Ex. 11.) Typically, Waverly 8:1:3 students,

4

such as C.B., attend the Sagamore 8:1:2 program as their next step, as it is the middle school version of the Waverly 8:1:3 program. (Tr. 260-61.) The students who transition from Waverly to Sagamore still require discrete trial instruction, highly individualized instruction, significant behavior management, structure and minimal transition throughout their school day. (Tr. 450-51; Ex. 31.) In addition, the general education peer buddies that C.B. enjoyed interacting with at Waverly were all transitioning to Sagamore. (Tr. 260-61, 450-51.)

The Waverly building team recommends what program is appropriate for each student and the CSE makes the final recommendation. (Tr. 128, 270, 460, 477.) Testimony from District witnesses during the IHO hearing regarding the CSE recommendation of the Sagamore 8:1:2 program indicated that such recommendation was made due to C.B.'s skill sets and significant needs in academics and management. (Tr. 182, 463-64.) In the Spring of 2022, when the recommendation for the Sagamore program was made, a psychological evaluation of C.B. found that her cognitive ability, her academic skills, and her adaptive behaviors fell significantly below expectation. (Tr. 359; Ex. 11-9.)

The classroom program at Sagamore functions based upon the principles of applied behavior analysis, including the use of discrete trial instruction for teaching new skills. (Tr. 463-64; Exs. 11-10, 12-10.) C.B. requires extensive one-to-one instruction and students in the Sagamore program are taught in individualized sessions with discrete trial program books and they learn new skills in a very repetitive manner. (Tr. 268.) There are few transitions in that the students utilize only two classrooms in an effort to simulate the middle school experience. (Tr. 268.) Staff remain constant and the students only move from one classroom to another right next door. (Tr. 97, 370, 461.) The Sagamore classroom also has many items to address C.B.'s sensory needs, such as a trampoline, sensory tubs with moon sand, water beads, Play-Doh and slime. (Tr.

441.) It also has community exposure and building exposure to the general population, as the students gain ability to access same. (Tr. 207, 540.)

At C.B.'s annual review in May 2022, her parent requested that C.B. attend the Samoset 8:1:2 program since that was her home school and she wanted C.B. to be with students in her neighborhood. (Tr. 362, 464; Ex. 11.) The CSE considered the request and discussed the two programs. (Tr. 360-62; Ex. 11.) After a discussion of C.B.'s needs, the CSE determined that the least restrictive environment ("LRE") for C.B., and the environment that would provide the appropriate academic support for her in terms of discrete trial instruction and individualized instruction, would be at Sagamore. (Id.)

In contrast to the Sagamore program, the instruction at Samoset is almost exclusively whole group and small group instruction, without any discrete trial instruction. (Tr. 203.) It is departmentalized with English Language Arts, math, daily living skills, educational technology, science, prevocational, chorus and music lessons. (Tr. 534-36.) Students at Samoset transition each period into different classrooms with different teachers and the day is run on a forty-one minute bell schedule. (Tr. 204, 590.) Within the first minute of arriving at school, the students are ready to work. (Tr. 591-92.) Almost every period, the students at Samoset are in a different room with different room numbers. (Tr. 589.)

In the Samoset program, the students tend to have more verbal expression with a higher level of independence, so the adult support is not as intensive as in the Sagamore program. (Tr. 269, 372.) The role of the teaching assistant at Samoset is to prompt the students and to get them ready during the whole group and small group instruction, as well as to work with the small group. (Tr. 595.) The students can follow classroom routines, use lockers, follow their schedules, and pack and carry their own supplies and Chromebooks. (Tr. 589, 592.) The students in the

Samoset program are also very social. (Tr. 596.) They work on conversation skills and initiate play between each other and are very friendly, speaking to each other and initiating conversations. (Tr. 596.)

Like the Sagamore program, the Samoset program also has community-based instruction, but there is an emphasis on daily living activities, as well as trips to the grocery store and the community twice per month. (Tr. 109, 211, 608-09; Ex. 42.) In the prevocational skills class at Samoset, the students ran a coffee cart where they took orders from staff members, fulfilled those orders and delivered them. (Tr. 596.) Students also worked in the mail room sorting mail or putting mail in teachers' mailboxes. (Tr. 597.) In addition, the class worked on filing and sorting, as well as folding and sizing clothing items. (Tr. 597.) In general, once a skill was taught, the students could perform the tasks independently, although some would still require prompting to continue. (Tr. 596-97.)

During the IHO hearing, Waverly school psychologist, Julianne Hayes, opined that the learning style of the Samoset program, coupled with its frequent transitions, would be very challenging for C.B., both socially and emotionally, and that C.B. would struggle in that program. (Tr. 379.) C.B. has difficulty with transitions and gets anxious moving through hallways with a lot of students as it is over-stimulating and challenging for her. (Tr. 461.) Even the provision of a one-to-one TA for C.B. in the Samoset program would not render it appropriate for her because she would essentially be educated in a portion of the room alone with the TA, separating her from the program's whole group instruction. (Tr. 204-06, 213-14, 263, 373-74.) Such an arrangement would not only be distracting for C.B. but for the other students in the class as well. (Tr. 214.) Even with an individual TA, the nature and structure of the Samoset program would still not be as supportive as C.B. requires, and she would not be accessing the

instruction of the program. (Tr. 204-06, 373-74.) Socialization opportunities would be drastically different as she would be working one-to-one with an adult as opposed to in a group with her peers. (Tr. 599-600.) Academic discussion and vocational skills would also be different as the program would have to provide C.B. with supplemental activities. (Id.) Such accommodations would alter the heart of the Samoset program. (Id.) Alternatively, the District would have had to stop the classroom transitioning of all of the students for C.B. to remain in the class. (Tr. 213.) In effect, the District would have had to change the program to fit C.B.'s needs rather than the needs of the other students in the program. (Id.)

As stated above, after hearing testimony over the course of several non-consecutive days, the IHO ruled in favor of the District, finding that the Sagamore program was the appropriate placement for C.B. based upon her particular educational needs. (Gibson Decl., Ex. A at 47.) Upon the parents' appeal, the SRO affirmed the IHO's decision, finding that the evidence in the record supported the IHO's determination that the District offered C.B. a FAPE for the 2022-2023 school year. (Gibson Decl., Ex. B at 15.) Plaintiffs then commenced the within suit and the District moved for summary judgment. The Court now turns to the merits of the District's motion.

DISCUSSION

I.      Legal Standard

In IDEA cases such as this one, "a motion for summary judgment functions as an appeal from the SRO's administrative decision below." B.K. v. New York City Dep't of Educ., 12 F. Supp. 3d 343, 355 (E.D.N.Y. 2014) (citation omitted); see also M.H. v. New York City Dep't of Educ., 685 F.3d 217, 226 (2d Cir. 2012) ("Though the parties in an IDEA action may call the procedure a motion for summary judgment, the procedure is in substance an appeal from an

8

administrative determination, not a summary judgment [motion].") (citation and internal quotation marks omitted) (alteration in original). In determining the District's motion, the Court "is called upon to conduct an independent review of the administrative record, along with any additional evidence submitted by the parties – of which there is none – and to determine by a preponderance of the evidence whether the IDE[]A's strictures have been satisfied." B.K., 12 F. Supp. 3d at 355 (citing 20 U.S.C. § 1415(i)(2)(C)) (additional citations omitted).

"[T]he role of the federal courts in reviewing state educational decisions under the IDEA is 'circumscribed,'" M.H., 685 F.3d at 240 (quoting Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007)), and has been characterized as "modified de novo review." B.K., 12 F. Supp. 3d at 355 (citation omitted). While the Court must "engage in an independent review of the administrative record," id. (quoting Gagliardo, 489 F.3d at 112-13), such review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Board of Educ. v. Rowley, 458 U.S. 176, 206 (1982).

Rather, "federal courts reviewing administrative decisions must give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" Gagliardo, 489 F.3d at 113 (quoting Rowley, 458 U.S. at 206, 208). Reviewing courts are not permitted to make "subjective credibility assessment[s]," and may not "ch[oose] between the views of conflicting experts on . . . controversial issue[s] of educational policy . . . in direct contradiction of the opinions of state administrative officers who had heard the same evidence." M.H., 685 F.3d at 240 (quoting Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 383 (2d Cir. 2003)) (alterations in original). Instead, courts must generally "defer to the final decision of the

state authorities, even where the reviewing authority disagrees with the hearing officer." M.H.,

685 F.3d at 241 (quoting A.C. v. Board of Educ., 553 F.3d 165, 171 (2d Cir. 2009)). However,

the SRO's or IHO's factual findings "must be 'reasoned and supported by the record' to warrant

deference." M.H., 685 F.3d at 241 (quoting Gagliardo, 489 F.3d at 114).

II.     The IHO and the SRO Correctly Held that the District Offered C.B. a FAPE

Upon review of the IHO's decision, the SRO's decision, and the transcript from the IHO

hearing, the Court finds that both the IHO and the SRO correctly held that the District

established that the 8:1:2 program at Sagamore was the appropriate placement for C.B. for the

2022-2023 school year, based upon C.B.'s particular educational needs. As the witness testimony

at the IHO hearing reflects, C.B. requires extensive one-to-one instruction, which is provided for

in the Sagamore program. Students are taught in individualized sessions with discrete trial

program books, learning new skills in a repetitive manner. There are very few transitions in the

Sagamore program and the classroom has multiple items to address C.B.'s sensory needs. While

Plaintiffs argue that the cohort of students at Sagamore was not appropriate for C.B., the

witnesses who testified for the District at the IHO hearing stated otherwise, testifying multiple

times that C.B.'s needs and learning style were similar to those of the students in the Sagamore

program.

The testimony provided at the IHO hearing established that the Samoset program is quite

different from Sagamore. The instruction is almost exclusively whole group and the small group

instruction does not use any discrete trial instruction. Students transition frequently between

classrooms and there is a higher level of independence than C.B. possesses. As the evidence at

the IHO hearing established, C.B. has difficulty with transitions and gets anxious moving

through hallways with lots of students as it is overstimulating for her. The learning environment

at Samoset would be quite challenging for C.B., both emotionally and socially, and she would likely struggle.

While Plaintiffs argue that the provision of a one-to-one TA at Samoset would render the program appropriate for C.B., the testimony at the IHO hearing established that providing her with a TA would have only isolated her further. C.B. would have had to be educated in a portion of the classroom alone with the TA, which would have been distracting for both her and the other students and would have prevented her from participating in the class's group lesson. Such an arrangement would have altered C.B.'s socialization opportunities drastically. Moreover, if C.B. was placed in the Samoset program, the District would have had to stop transitioning all of the students in order for C.B. to stay with her class since she has difficulty with transition. The District would have had to change the program to fit the needs of C.B., to the detriment of the other students. Accordingly, the Court finds that the Sagamore program was the least restrictive environment for C.B. and the District's placement in that program was appropriate.

III.     Plaintiffs' Argument of Predetermination is Not Supported by the Evidence

Plaintiffs also argue that the District's recommendation that C.B. be placed in the Sagamore program was predetermined and decided without any input from Plaintiffs. This Court agrees with both the IHO and the SRO that there was no evidence produced at the IHO hearing to support such a claim. Plaintiff N.B. attended all CSE meetings and the testimony at the IHO hearing indicated that the District explained both the Sagamore program and the Samoset program to her several times, as well as the basis for the CSE decision that Sagamore was the more appropriate program for C.B. Such discussions occurred in a meeting with the classroom teacher prior to the May 24, 2023 CSE meeting, as well as during and after the CSE meeting. The fact that individuals within the District discussed which program would be more appropriate

for C.B. ahead of the CSE meeting does not amount to predetermination. As the IHO correctly held, it is not unusual or inappropriate for the District's special education professionals to anticipate what the correct placement recommendation for C.B. would be, especially in light of the District's familiarity with her.

IV.     There is No Evidence of Bias by the IHO

Finally, Plaintiffs argue that the IHO was biased against them and in favor of the District. Upon appeal, the SRO held that there is no indication that the IHO demonstrated any bias in his words or his conduct. After reviewing the transcript of the IHO hearing, this Court agrees with the SRO. There is no merit to Plaintiffs' claim of bias on the part of the IHO.

V.      Attorney's Fees

In their opposition to the within motion for summary judgment, Plaintiffs request that this Court award them attorney's fees under the IDEA. Pursuant to 20 U.S.C. § 1415(i)(3)(B), a court, in its discretion, may award reasonable attorney's fees to a prevailing party. See 20 U.S.C. § 1415(i)(3)(B). Plaintiffs herein, however, are not prevailing parties. They did not prevail at the IHO or the SRO level and they have not prevailed here. Accordingly, any request for attorney's fees is without merit.

CONCLUSION

For the foregoing reasons, the Court finds that Defendant Sachem Central School District offered Plaintiff C.B. a free and appropriate public education for the 2022-2023 school year. Accordingly, Defendant's motion for summary judgment is granted in its entirety. The Clerk of the Court is directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated:  Central Islip, New York
         March 25, 2026

 /s/ Anne Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge

13